IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SCOTT D. YOUNG            )
                          )
v.                        )     No. 3:05-0338
                          )     Judge Wiseman/Brown
JO ANNE B. BARNHART, Commissioner  )
of Social Security        )

To:  The Honorable Thomas A. Wiseman, Jr., Senior Judge

**REPORT AND RECOMMENDATION**

**I. INTRODUCTION**

         This is a civil action filed pursuant to 42 U.S.C.
§405(g), to obtain judicial review of the final decision of the
Commissioner of Social Security terminating plaintiff's
disability insurance benefits ("DIB"), as provided under Title II
of the Social Security Act ("the Act"), as amended.  The case is
currently pending on plaintiff's motion for judgment on the
administrative record (Docket Entry No. 8), to which defendant
has responded (Docket Entry No. 12).  Plaintiff has further filed
a reply to defendant's response (Docket Entry No. 13).  For the
reasons stated below, the Magistrate Judge recommends that
plaintiff's motion be **GRANTED**, and that the decision of the
Commissioner be **REVERSED** and the cause **REMANDED** for further
administrative proceedings consistent with this report.

1

## II. BACKGROUND

Plaintiff initially filed an application for a period of disability and DIB on August 19, 1986 (Tr. 28-31). On September 22, 1986, the government found that plaintiff was disabled and entitled to benefits as of August 15, 1986, due to statutory blindness (Tr. 32). Plaintiff thereafter began self-employment as a blind vendor, operating a business known as "Young's Snackbar" in December 1988 (Tr. 64). After application of a trial work period, the government determined that plaintiff's business activities did not preclude the continuation of his benefits. This determination prevailed until January 2000, the date upon which plaintiff was found to be receiving income in excess of the prescribed maximum. The cessation of plaintiff's benefits was ordered on August 19, 2002 (Tr. 126), affirmed upon reconsideration on February 6, 2003 (Tr. 135), and reaffirmed by an Administrative Law Judge ("ALJ") on May 28, 2004 (Tr. 18-21) after a hearing at which plaintiff and one other witness testified (Tr. 303-316).

On September 7, 2004, the Appeals Council denied plaintiff's request for review of the decision of the ALJ (Tr. 10-12), thereby rendering that decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence,

2

based on the record as a whole, then these findings are conclusive.  Id.

The increase in plaintiff's income as of January 2000 is attributable to the relocation of his vending machine business to the campus of Middle Tennessee State University ("MTSU"), where pursuant to a cooperative agreement between MTSU and the state agency charged with implementing the provisions of the Randolph-Sheppard Act, 20 U.S.C. § 107 et seq.,[1] and its state law corollary, plaintiff became the beneficiary of a contract negotiated between the university and the Coca-Cola Bottling Company (Tr. 284-86).  Plaintiff's business activities at MTSU consisted of filling five vending machines at a campus location known as Peck Hall (Tr. 306-07), where the university also permitted Coca-Cola to operate thirteen so-called "full service" vending machines in with an agreed commission rate on sales from those machines (Tr. 285-86, 313-14).  Pursuant to federal and state law, and the cooperative agreement between the state agency and MTSU recognizing such, plaintiff is paid each year an amount equivalent to the commissions on sales from those full service machines.

While the day-to-day operations and profitability of plaintiff's business did not change in any significant respect

---

[1]This statute was enacted "[f]or the purposes of providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting ..."  20 U.S.C. § 107(a).

3

vis-á-vis his entitlement to benefits, his income for the year 2000 and beyond dramatically increased as a result of his relocation to MTSU, and his statutory entitlement to the Coca-Cola commissions on account of the competing, full service vending machines which Coca-Cola maintained on the same property as plaintiff's business. This increase in plaintiff's income has been on the order of $40,000.00 and above from the year 2000 to present. It is undisputed that plaintiff was not responsible in any way for the full service vending machines, and did not take any action with regard to those machines, their stock, or their receipts.

### III.  DISCUSSION

#### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. Jones v. Secretary, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the

4

conclusion." Her v. Commissioner, 203 F.3d 388, 389 (6th Cir. 1999)(citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." Bell v. Commissioner, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. Her, 203 F.3d at 389 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. Hurst v. Secretary, 753 F.2d 517, 519 (6th Cir. 1985).

      B. Proceedings at the Administrative Level

      The Commissioner's periodic review of benefits recipients is governed by 42 U.S.C. § 1382c(a)(4), as implemented in the regulations at 20 C.F.R. §§ 404.1594 and 416.994. The implementing regulations incorporate the five-step sequential evaluation for initial disability review, but structure the analysis so as to "assure that disability reviews are carried out in a uniform manner, that decisions of continuing disability can be made in the most expeditious and administratively efficient way, and that any decisions to stop disability benefits are made objectively, neutrally, and are fully documented..." 20 C.F.R. § 404.1594(f). The result is an eight-step sequential evaluation process, the first step of which is to determine whether the

5

claimant is currently engaging in substantial gainful activity ("SGA"). The instant case was decided at this first step.

## C. Plaintiff's Statement of Errors

Plaintiff's contention in this case is that the ALJ, in ascertaining plaintiff's "countable income" for purposes of determining whether plaintiff had engaged in SGA, erroneously included as "fully earned" income plaintiff's so-called "commissions" from the Coca-Cola contract, despite the record evidence that plaintiff did nothing with respect to the full-service vending machines which generated the commissions. As explained below, the undersigned concludes that the issue of whether or not this commission income was earned by plaintiff, or whether the distinction of earned versus unearned is even an issue in establishing the self-employment income from which the countable earnings of an otherwise disabled blind vendor are ascertained, deserves further administrative consideration.

### 1. The Regulations

The Commissioner's regulations provide the framework for determining when an individual is precluded from receiving (or continuing his receipt of) benefits by virtue of that individual's ability to engage in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1571, 404.1572. The regulations separately address the "[e]valuation of work activity of blind people," explaining that "[i]f you are blind (as explained in §

6

404.1581), we will consider the earnings from the work you are doing to determine whether or not you should be paid cash benefits." 20 C.F.R. § 404.1584(a). It is further explained that

> If you are under age 55, we will evaluate the work you
> are doing using the guides in paragraph (d) of this
> section to determine whether or not your work shows
> that you are doing substantial gainful activity. If
> you are not doing substantial gainful activity, we will
> pay you cash benefits. ...
> We will ordinarily consider that your earnings from
> your work activities show that you have engaged in
> substantial gainful activity if your monthly earnings
> average more than the amount(s) shown in paragraphs
> (d)(2) and (3) of this section. We will apply §§
> 404.1574(a)(2), 404.1575(c), and 404.1576 in
> determining the amount of your average earnings.

20 C.F.R. § 404.1584(b), (d)(1). Paragraph (d)(3) of this section, pertaining to earnings in taxable years beginning with 1978, contains a table showing different dollar amounts for each successive year; if a claimant's average monthly income exceeds the listed amount in a given year, substantial gainful activity is established.[2]

      As referenced above, the amount of average monthly earnings which are compared to the values in the aforementioned table are determined under procedures which are set out in §§ 404.1574 ("Evaluation guides if you are an employee"), 404.1575 ("Evaluation guides if you are self-employed"), and 404.1576

---

[2]It is undisputed that plaintiff's average monthly income would not exceed the listed amount if the commissions at issue here were not considered.

7

("Impairment-related work expenses").  If the claimant is an employee, § 404.1574(a)(2) provides as follows:

> *We consider only the amounts you earn*.  When we decide whether your earnings show that you have done substantial gainful activity, we do not consider any income that is not directly related to your productivity.  When your earnings exceed the reasonable value of the work you perform, we consider only that part of your pay which you actually earn.  If your earnings are being subsidized, we do not consider the amount of the subsidy when we determine if your earnings show that you have done substantial gainful activity.  We consider your work to be subsidized if the true value of your work, when compared with the same or similar work done by unimpaired persons, is less than the actual amount of earnings paid to you for your work. ...

In the same vein, paragraph (a)(3) of this section recognizes that "[i]f you are working in a sheltered workshop, you may or may not be earning the amounts you are being paid."

On the other hand, if the claimant is self-employed, § 404.1575 provides in pertinent part as follows:

> (a) ... We will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed.  We will not consider your income alone because the amount of income you actually receive may depend on a number of different factors, such as capital investment and profit-sharing agreements. ... We will evaluate your work activity based on the value of your services to the business regardless of whether you receive an immediate income for your services.  We determine whether you have engaged in substantial gainful activity by applying three tests [, the latter two of which are not relevant here; see SSR 83-34, discussed <u>infra</u>] ... :
> (1) *Test One*: You have engaged in substantial gainful activity if you render services that are

8

significant to the operation of the business[3] and
receive a substantial income from the business. ...

    (c) *What we mean by substantial income*.  We deduct
your normal business expenses from your gross income to
determine net income.  Once we determine your net
income, we deduct the reasonable value of any
significant amount of unpaid help furnished by your
spouse, children, or others.  Miscellaneous duties that
ordinarily would not have commercial value would not be
considered significant.  We deduct impairment-related
work expenses that have not already been deducted in
determining your net income.  Impairment-related work
expenses are explained in § 404.1576.  We deduct
unincurred business expenses paid for you by another
individual or agency.  An unincurred business expense
occurs when a sponsoring agency or another person
incurs responsibility for the payment of certain
business expenses, e.g., rent, utilities, or purchases
and repair of equipment, or provides you with
equipment, stock, or other material for the operation
of your business.  We deduct soil bank payments if they
were included as farm income.  That part of your income
remaining after we have made all applicable deductions
represents the actual value of work performed.  The
resulting amount is the amount we use to determine if
you have done substantial gainful activity. ...

## 2. <u>The Ruling</u>

    The Commissioner has issued a Social Security Ruling
clarifying the application of the regulatory regime for
determining when self-employment activity is SGA.  SSR 83-34,
1983 WL 31256 (S.S.A.).  This ruling contains a section entitled
"Evaluation of Work Activity in Title II Blindness Cases,"
wherein it is stated that,

---

[3]The "significant services" part of this test is inapposite when the
self-employed claimant is blind, as the aid of others appears to be presumed
and is accounted for as a deduction in subsection (c), which subsection
provides the sole measure of substantial gainful activity in cases of blind,
self-employed claimants.  <u>See</u> SSR 83-34, 1983 WL 31256, at *10 (S.S.A.).

Case 3:05-cv-00338   Document 14   Filed 12/07/05   Page 9 of 20 PageID #: 371

Prior to application of the Earnings Guidelines for a determination as to SGA, the blind individual's self-employment income should be evaluated in the same manner as that of nonblind individuals in order to determine "countable income." That is, it is necessary to deduct from net income the reasonable value of any significant amount of unpaid help; [impairment-related work expenses] if they were not already deducted from gross income as a business expense; unincurred business expenses; and any soil bank payments if such payments were included as income by a farmer.

The self-employment activity of blind persons in 1978 or later should be evaluated only in terms of the dollar amounts shown in the SGA Earnings Guidelines. It should not be evaluated in terms of the tests of comparability and worth or work [(Tests Two and Three from § 404.1575(a))]...

The ruling also provides that, in determining "countable income," "[e]valuation of a self-employed person's work activity for SGA purposes is concerned with only that income which represents the person's own productivity. Therefore, before applying the Earnings Guidelines, it is necessary to ascertain what portion of the individual's income represents the actual value of the work he or she performed."

### 3. The ALJ's Decision

The ALJ accurately summarized the standard to be applied to consideration of a blind vendor's self-employment earnings, and affirmed the prior determination of plaintiff's monthly "countable earnings," which included amounts attributable to the Coca-Cola commissions and deducted amounts characterized as unincurred business expenses (Tr. 20). In so doing, the ALJ rejected the position of the National Federation of the Blind

10

(Tr. 236-38), which argued on plaintiff's behalf that the commissions were analogous to soil bank payments, a specific exclusion from net income in the countable earnings calculus. The ALJ reasoned as follows:

> The claimant included the "commissions" as part of his net earnings from self-employment for tax purposes, and it is the increase in this income that eventually resulted in the termination of cash benefits.
>
> The undersigned is not persuaded that the "commissions" should be excluded from the claimant's "countable income." The above-cited ruling and regulations unambiguously describe the types of expenses to be deducted in determining "countable income." Commissions received as a blind vendor are not listed among the excludable categories for determining "countable income," and the claimant has cited no authority supporting his position on the issue beyond the analogy to soil bank payments. The undersigned observes that the soil bank program (created by the Agricultural Act of 1956 and repealed by the Food and Agriculture Act of 1965) provided compensation to farmers for economic loss incurred by removing land from agricultural production. This is distinguishable from the commissions paid to the claimant, the receipt of which would necessarily be linked to his successful ongoing activity as a blind vendor.

(Tr. 20). The ALJ concluded by finding that "the claimant worked and fully earned over the monthly limit for substantial gainful activity for individuals with statutory blindness in January 2000 and continuing." (Tr. 21). His specific, enumerated findings were as follows:

1. The claimant has engaged in substantial gainful activity since the last favorable determination.

2. The claimant is working as a blind vendor, and has been since December 1988. His earnings averaged $2,419.33 per month in 2000 and $3,389.83 per month in 2001. The

11

claimant's work is continuing.

3. The claimant's work activity involves significant physical or mental activity for pay or profit (20 CFR § 404.1572).

4. The claimant's work activity constitutes substantial gainful activity within the meaning of the regulations for the period January 2000 and continuing (20 CFR §§ 404.1575 and 404.1584).

5. The claimant is no longer disabled within the meaning of the Social Security Act.

(Tr. 21).

### 4. The Argument Here

Plaintiff has essentially abandoned the analogy to soil bank payments in his argument to this Court, instead focusing on the finding that the commissions were "fully earned" and highlighting the testimonial evidence which indicates that these commissions are in no way remunerative of plaintiff's efforts, and thus are not income earned from his business activities. In defense of the ALJ's decision, the government in its brief first notes the standard of review: "Judicial review is limited to determining whether the findings of the Commissioner are supported by substantial evidence, and whether the correct legal standards were applied." (Docket Entry No. 12, p. 8 (citations omitted)). Despite the development of the issues by the parties in their briefs and the undersigned's own research, the undersigned has not been able to determine the correct legal standard to be applied to these facts, and thus is unable to

12

determine whether there is a need for the evidence to substantially support the finding that plaintiff "fully earned" the commissions.

The government defends the ALJ's calculation by reference to § 404.1575(c) and SSR 83-34, and in fact it does not appear that the ALJ erred in any respect in making the deductions called for by those authorities, nor in rejecting the analogy to soil bank payments. But the issue raised by plaintiff is whether or not the commission payments[4] should have been included as gross or net "self-employment income," prior to any applicable deductions, in view of their dissociation from any activity of plaintiff's other than simply the location of his business. Put another way, plaintiff contends that the commissions are not income received from his business, but only as a result of his business, and should therefore not be factored into the SGA determination. The ALJ essentially found a "but for" causal link between plaintiff's employment and the commission payments,

_____

[4]It appears that, with respect to plaintiff's receipt of these monies, the term "commissions" is only used for lack of a better word. Defendant cites the dictionary definition of the term as "a sum or percentage allowed to an agent, salesman, or vendor for his services." However, it is clear that plaintiff is not the original salesman or vendor who generated these commissions, but only receives an amount equivalent to the commissions pursuant to his legal entitlement to same. Thus, defendant's argument based on the repeated reference to "commissions" and the dictionary definition of that term is unavailing. Likewise, the mere fact that the state agency in its agreement with MTSU bound plaintiff to stock his beverage machines with exclusively Coca-Cola products simply does not bear any weight with respect to the earned versus unearned issue. While defendant has argued these points in her brief, the ALJ did not identify any reasons for his finding that plaintiff fully earned the commissions, other than as identified supra p. 11.

13

noting that plaintiff's receipt of these payments "would necessarily be linked to his successful ongoing activity as a blind vendor," and further observed that plaintiff reported them as self-employment income for tax purposes (Tr. 20). However, these factors do not necessarily relate to the question of whether the income was earned.[5]

The distinction between earned and unearned income is drawn in various places in the disability regulations, particularly in the entitlement provisions of Title XVI (Supplemental Security Income), 20 C.F.R. §§ 416.1104, 416.1110-.1112, 416.1120-.1124, and, more saliently, in the Title II regulation cited above which deals with evaluating the work activity of an employee, 20 C.F.R. § 404.1574(a)(2). The language of the corresponding regulation dealing with self-employment speaks of the claimant's value to the business, and the relevant ruling states that it "is concerned with only that income which represents the person's own productivity"; however, these references appear to distinguish between the claimant's

---

[5]Defendant argues that plaintiff's inclusion of this income on his tax returns is "convincing" evidence that the income was earned, citing <u>Jabbar v. Sec'y of Health & Human Servs.</u>, 855 F.2d 295, 298 (6th Cir. 1988). However, <u>Jabbar</u> does not purport to establish this rule, but clearly confines the finding to the facts considered in that case, which involved the Commissioner's rejection of self-employment tax returns as evidence that the claimants' decedent worked and earned sufficient quarters of coverage to entitle his survivors to benefits. Indeed, despite numerous indicia of the reliability of the returns at issue in <u>Jabbar</u>, the Commissioner "[r]emained unconvinced that the income was actually earned," prompting the court to note that "[t]here certainly may be circumstances where the filing of forms and even the payment of taxes may not be evidence that the underlying income was actually earned." <u>Id.</u>

14

efforts and the uncompensated efforts of others or the assumption by others of the claimant's unincurred business expenses. Nonetheless, the goal of the regulation is to establish the business owner's contribution to the generation of income.

The employee regulation is actually more supportive of the distinction between income earned from work effort and that which is not, specifically as it pertains to the situation where earnings are subsidized by the employer or a remedial government program. While in this case there is no employer to subsidize income from work efforts that are lacking due to impairment, there <u>is</u> a remedial government program. Thus, it would appear that this language excluding subsidies from the calculation of income makes for the best analogy to the specific case of a self-employed blind vendor operating on government-owned property, whose ability to compete in the marketplace is prioritized and subsidized by the Randolph-Sheppard Act. <u>Cf.</u> <u>Innerebner v. Apfel</u>, 67 Soc.Sec.Rep.Serv. 262, 2000 WL 274185 (N.D. Cal. March 2, 2000)(finding error in the ALJ's refusal to make any adjustment to the income of an employee claimant who was only able to work and receive a full wage with a job coach provided by virtue of his participation in a program funded by the Rehabilitation Act of 1973,[6] and finding that "[i]t does not

_____

[6]Much like the Randolph-Sheppard Act, the purposes of the Rehabilitation Act are "(1) to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society ... and (2) to ensure that the Federal Government plays a leadership

15

matter who pays for the job coach, the employer or a third-party organization. The applicant should not be charged with that portion of his or her paycheck that someone else earns. *SSA so concedes.*")(emphasis added).

The only cases which the undersigned has been able to find which present arguments by apparently self-employed blind vendors similar to the argument raised here are <u>Ozier v. Schweiker</u>, 1982 U.S. Dist. LEXIS 18123 (N.D. Ala. Oct. 12, 1982), and <u>Cox v. Cohen</u>, 321 F.Supp. 534 (N.D. Cal. 1971). In <u>Ozier</u>, the district court rejected the blind claimant's argument that the income he received from vending machines operated "in his name" was not earned, and thus not countable. However, there is no citation in that court's cursory opinion to the Randolph-Sheppard Act, and the fact that the vending machines were operated in claimant's name seems to suggest that some unnamed person aiding in the business operated the machines at issue. Moreover, the court, referring to the regulations as they existed in 1982, stated that there was no basis in those regulations for distinguishing between earnings and income, while the regulations

---

role in promoting the employment of individuals with disabilities, especially individuals with significant disabilities, and in assisting States and providers of services in fulfilling the aspirations of such individuals with disabilities for meaningful and gainful employment and independent living." 29 U.S.C. § 701(b). Particularly in light of these remedial purposes, it is difficult for the undersigned to conceive of a rationale for not counting the income attributable to a subsidy in the form of a job coach paid by federal funds, while counting the income attributable to a subsidy mandated by federal law, all on account of the distinction between being self-employed versus being someone else's employee.

Case 3:05-cv-00338   Document 14   Filed 12/07/05   Page 16 of 20 PageID #: 378

in their current form appear to provide ample grounds for such a distinction.

Likewise, while <u>Cox</u> deals with a self-employed blind vendor and does cite the Randolph-Sheppard Act, and furthermore states the issue as "whether the record contains substantial evidence that plaintiff's operation of the vending stand *and profit-sharing in the [competing] vending machines* constitutes substantial gainful activity," <u>id.</u> at 536 (emphasis added), that case also was decided under then-existing regulations which apparently did not distinguish between an employee and a self-employed individual, and which only considered "earnings attributable to the individual's productivity, as distinguished from a subsidy related to other factors (e.g., his financial needs)". That case was decided against the government despite claimant's income which exceeded the regulatory limit, on the basis of the claimant's limited individual productivity, and without considering the extent to which claimant's income was earned. Neither party to the instant case cites any other court decision which speaks to the precise issue presented here.

However, notably, the record contains two items which suggest that such commission payments to self-employed blind vendors have not in the past been counted in the SGA determination. In a letter addressed to plaintiff by the Director of Services for the Blind and Visually Impaired, a

17

division of the state of Tennessee's Department of Human Services, the Director (who presumably speaks from a wealth of experience in such matters) advised plaintiff in no uncertain terms that, "[i]n addition to the above [unincurred expenses], you can deduct any income derived from vending machines on full service. The Social Security Administration does not consider this to be earned income. Therefore, if you receive any commissions, these will not be counted against you." (Tr. 217-18). Furthermore, in his brief to the Appeals Council, plaintiff's counsel noted that

> ... the Appeals Council has addressed this situation in the past and decided that income received from companies due to 34 CFR §§ 395.32 and 395.8 (the federal regulations analogous to TBE 1240-6-8.01) should not be included as countable income for the purposes of determining eligibility for SSDI benefits (See Exhibit C attached).

(Tr. 300). For whatever reason, the referenced "Exhibit C" did not make it into the administrative record on appeal to this Court. However, it appears from these items that the Social Security Administration has a policy (if not a specific regulation or ruling) with regard to such income that has not been followed in this case. That the issue has apparently not been litigated past the Appeals Council level (at least not as disclosed in the research of the parties or the undersigned) further indicates the existence of such a policy.

In short, the ALJ's finding that plaintiff "fully

18

earned" the "commissions" paid to him pursuant to the agreement between the Tennessee Department of Human Services and MTSU (implementing the provisions of the Randolph-Sheppard Act) begs the question of whether the income from which the applicable deductions under § 404.1575(c) are made should include unearned income. If unearned income should not be included in that initial figure from which deductions are made to arrive at first net income and then "countable income," then the fact that "[c]ommissions received as a blind vendor are not listed among the excludable categories for determining 'countable income'" (Tr. 20) does not substantially support the ALJ's decision. The undersigned concludes that this case should be remanded for further development and consideration at the agency level.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be **GRANTED**, and that the decision of the Commissioner be **REVERSED** and the cause **REMANDED** for further administrative proceedings consistent with this report.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in

19

which to file any responses to said objections.  Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

      **ENTERED** this 7th day of December, 2005.


       /s/ Joe B. Brown
      JOE B. BROWN
      United States Magistrate Judge