IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SCOTT D. YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:05cv0338 |
| ) | |
| JO ANNE B. BARNHART, Commissioner of ) | Judge Thomas A. Wiseman, Jr. |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

Plaintiff Scott D. Young filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") terminating plaintiff's disability insurance benefits ("DIB"), as provided under Title II of the Social Security Act (the "Act"), based upon a finding that Plaintiff's self-employment earnings had exceeded the permissible maximum. This case was referred to United States Magistrate Judge Joe B. Brown pursuant to 28 U.S.C. § 636(b)(1)(B). Thereafter, Plaintiff Scott D. Young filed a motion for judgment on the administrative record (Doc. No. 8), requesting that the Commissioner's decision be reversed or, alternatively, remanded pursuant to sentence four of 42 U.S.C. § 405(g) to allow the ALJ to apply the appropriate legal standard. Magistrate Judge Brown filed a Report and Recommendation ("Report") (Doc. No. 14) recommending that Plaintiff's motion be granted. The Commissioner filed timely objections (Doc. No. 15).

Upon review of the Administrative Record as a whole, the Magistrate's Report and the Commissioner's objections, the Court finds the Commissioner's objections to be without merit and therefore **OVERRULES** those objections. As set forth herein, the Court finds that the Magistrate reached the correct conclusions in the Report and therefore **ACCEPTS AND ADOPTS** the Magistrate Judge's Report and Recommendation, and **GRANTS** Plaintiff's Motion. The Commissioner's judgment is **REVERSED** and this cause is **REMANDED** for further proceedings consistent with this opinion.

I.  BACKGROUND

   A.   Procedural Background

Plaintiff initially filed an application for a period of disability and DIB on August 19, 1986.

(Administrative Record ("AR") 28–31.) On September 22, 1986, the government found that Plaintiff was disabled due to statutory blindness and entitled to benefits beginning August 15, 1986. (AR 32.) At a Continuing Disability Review conducted in 2002, however, the Commissioner determined that Plaintiff began earning income in excess of the prescribed maximum as of January 2000. The cessation of Plaintiff's benefits was ordered on August 19, 2002 (retroactive to January 2000) (AR 126), affirmed upon reconsideration on February 6, 2003 (TR 135), and reaffirmed by an Administrative Law Judge ("ALJ") on May 28, 2004 (AR 18–21) after a hearing at which Plaintiff and one other witness testified (AR 303–16). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision (AR 10–12), thereby rendering the ALJ's decision the final decision of the Commissioner.

This civil action was thereafter timely filed, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court referred this matter to the Magistrate Judge who recommended that the Commissioner's denial of benefits be reversed and that the matter be remanded for "further development and consideration at the agency level." (Doc. No. 14, at 19.) More specifically, as explained below, the Magistrate found that the ALJ failed to address the question of whether payments Plaintiff received in connection with his business operation, but with respect to which he did not actually perform any work, should have been considered "earned income" for purposes of determining whether Plaintiff was engaged in substantial gainful activity from which he earned substantial income. The Commissioner objects, arguing that (1) the Magistrate Judge incorrectly found that the ALJ was required "to deduct any type of unearned income from countable income, in addition to the deductions mentioned specifically in the regulation"; and (2) the Magistrate Judge incorrectly found that the ALJ had failed to follow the Commissioner's policy or practice of deducting such unearned income from the countable income calculation. (Doc. No. 15, at 2.) In fact, as discussed below, the Commissioner's arguments are misplaced because the Magistrate Judge did not actually reach either of those findings.

**B.     Factual Background**

The Social Security Administration found Plaintiff to be statutorily blind and entitled to benefits as of August 15, 1986. In December 1988, Plaintiff began self-employment as a blind vendor, operating a business known as "Young's Snackbar" through a program offered by the Tennessee Department of Human Services. (AR 39–43, 64–71.) The Commissioner determined in August 1990, after application of a trial work period,

2

that Plaintiff's business activities did not constitute substantial gainful activity ("SGA") as defined by regulation, and therefore did not bar the continuation of his benefits. Plaintiff continued to operate his business in the same fashion for the next ten years while continuing to receive benefits.

Beginning in April 2000, Plaintiff relocated his vending machine business from the Tennessee Technology Center in Livingston, Tennessee (AR 306) to the campus of Middle Tennessee State University ("MTSU"). There, Plaintiff continued to operate his business by filling five vending machines at Peck Hall on MTSU's campus. (AR 306–07.) It is undisputed that the amounts Plaintiff earned from those five vending machines alone was not enough to preclude his entitlement to DIB. In addition to the income earned from those machines, however, Plaintiff also began receiving a monthly "commission" check from the Coca-Cola Bottling Company ("Coca-Cola"). These payments were the result of a 1993 Cooperative Agreement between MTSU and the state agency charged with implementing the provisions of the Randolph-Sheppard Act, 20 U.S.C. §§ 107–107f, and its state law corollary, Tenn. Code Ann. §§ 71-4-501 to -509,[1] pursuant to which Plaintiff received a certain percentage of the profit generated by thirteen full-service vending machines owned and operated by Coca-Cola in Peck Hall. (AR 284–86, 307–08, 313–15.) The total amount of Plaintiff's "commission" payments from Coca-Cola ranged between $40,000 and $49,000 annually during the relevant time frame. (AR 308.)

Although the parties refer to the payments from Coca-Cola as "commissions," it is undisputed that Plaintiff was not required to take any action with respect to Coca-Cola's thirteen vending machines in order to receive the payments: He did not service the machines, stock them, empty the cash boxes or anything else. (AR 308, 314.) Instead, he was simply the third-party beneficiary of the above-referenced Cooperative Agreement. His receipt of the money from Coca-Cola was contingent, however, on his continuing to operate and service the five other vending machines in Peck Hall for which he was responsible. (AR 314–15.)

The dramatic increase in his income beginning in 2000 led to the Continuing Disability Review in 2002 and to the Commissioner's finding that Plaintiff was not entitled to DIB after January 2000.

---

[1]The Randolph-Sheppard Act was enacted "[f]or the purpose of providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting." 20 U.S.C. § 107(a). Similarly, the purpose of Tennessee's statute is to provide blind individuals "the greatest possible opportunities to operate such vending facilities so that they may become self-supporting." Tenn. Code Ann. § 71-4-501.

3

## II. THE ALJ'S FINDINGS

### A. The Regulations Applicable To the ALJ's Findings

The ALJ identified the issue to be resolved as whether Plaintiff was engaged in substantial gainful activity as that term is defined by the regulations pertaining to blind individuals. In considering the issue, the ALJ correctly observed that 20 C.F.R. §§ 404.1575 and 404.1584, as clarified by Social Security Ruling 83-34, control the calculation of a blind person's income for purposes of determining whether he is engaged in SGA.

SSR 83-34 states:

> Prior to the application of the Earnings Guidelines for a determination as to SGA, the blind individual's self-employment income should be evaluated in the same manner as that of nonblind individuals in order to determine "countable income." That is, it is necessary to deduct from net income the reasonable value of any significant amount of unpaid help; [impairment-related work expenses] if they were not already deducted from gross income as a business expense; unincurred business expenses; and any soil bank payments if such payments were included as income by a farmer.
>
> The self-employment activity of blind persons in 1978 or later should be evaluated only in terms of the dollar amounts shown in the SGA Earnings Guidelines. It should not be evaluated in terms of the tests of comparability and worth of work [Tests Two and Three from § 404.1575(a)]. . . .

Notably, the ruling also provides that, in calculating countable income, "[e]valuation of a self-employed person's work activity for SGA purposes is concerned only with that income which represents the person's own productivity. Therefore, before applying the Earnings Guidelines, it is necessary to ascertain what portion of the individual's income represents the actual value of the work he or she performed." Id.

20 C.F.R. § 404.1584 provides, in pertinent part: "If you are blind . . . , we will consider the earnings from the work you are doing to determine whether or not you should be paid cash benefits." 20 C.F.R. § 404.1584(a). The regulation further explains:

> If you are under age 55,[2] we will evaluate the work you are doing using the guides in paragraph (d) of this section to determine whether or not your work shows that you are doing substantial gainful activity. If you are not doing substantial gainful activity, we will pay you cash benefits. . . .
>
> . . . .
>
> . . . . We will ordinarily consider that your earnings from your work activities show that you have engaged in substantial gainful activity if your monthly earnings average more than the amount(s) shown in paragraphs (d)(2) and (3) of this section. We will apply §§ 404.1574(a)(2) , 404.1575(c), and 404.1576 in determining the amount of your average earnings.

---

[2]Plaintiff's dated of birth is February 3, 1963, so he is 43 years old as of the date of this decision.

20 C.F.R. § 404.1584(b) and (d)(1). Paragraph (d)(3) of this section, pertaining to earnings in taxable years beginning with 1978, contains a table showing different dollar amounts for each successive year; if a claimant's average monthly earnings income exceeds the listed amount in a given year, substantial gainful activity is established.[3]

As referenced in § 404.1584, the amount of average monthly earnings which are compared to the values in the aforementioned table are determined under procedures set out in §§ 404.1574 ("Evaluation guides if you are an employee"), 404.1575 ("Evaluation guides if you are self-employed"), and 404.1576 ("Impairment-related work expenses"). The relevant provision for our purposes, section 404.1575, provides:

> We will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed. We will not consider your income alone because the amount of income you actually receive may depend on a number of different factors, such as capital investments and profit-sharing agreements. . . . We will evaluate your work activity based on the value of your services to the business regardless of whether you receive an immediate income for your services. We determine whether you have engaged in substantial gainful activity by applying three tests [the latter two of which are not relevant here; see SSR 83-34, above] . . . .
>
> (1) *Test One*: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business . . . .
>
> . . . .
>
> (c) *What we mean by substantial income*. We deduct your normal business expenses from your gross income to determine net income. Once we determine your net income, we deduct the reasonable value of any significant amount of unpaid help furnished by your spouse, children, or others. Miscellaneous duties that ordinarily would not have commercial value would not be considered significant. We deduct impairment-related work expenses that have not already been deducted in determining your net income. . . . We deduct unincurred business expenses paid for you by another individual or agency. An unincurred business expenses occurs when a sponsoring agency or another person incurs responsibility for the payment of certain business expenses, e.g., rent, utilities, or purchases and repair of equipment, or provides you with equipment, stock, or other material for the operation of your business. We deduct soil bank payments if they were included as farm income. That part of your income remaining after we have made all applicable deductions represents the actual value of work performed. The resulting amount is the amount we use to determine if you have done substantial gainful activity.

20 C.F.R. § 404.1575(a) and (c).

---

[3]Blind individuals receive special protections under the Social Security Act and Regulations. For instance, they are permitted to earn substantially more money per month than individuals with other types of disabilities before being considered to be engaged in SGA and therefore ineligible for DIB. Compare 20 C.F.R. § 404.1584 with 20 C.F.R. § 404.1574. This preference is evidently a conscious policy decision based upon a legislative presumption that blind persons are in a "less favorable position than others who, though suffering from disabilities, nonetheless still have their eyesight." Spragens v. Shalala, 36 F.3d 947, 951 (10th Cir. 1994).

Case 3:05-cv-00338 Document 16 Filed 02/21/06 Page 5 of 14 PageID #: 394

### B. The ALJ's Decision

The ALJ accurately summarized the above-referenced regulations, on the basis of which he affirmed the agency's prior determination that Plaintiff's monthly "countable earnings" included the amounts attributable to the Coca-Cola "commissions." He deducted from that total the amounts characterized as unincurred business expenses. (AR 20.) In reaching his conclusions, the ALJ rejected the argument made by the National Federation of the Blind on Plaintiff's behalf (see AR 236–38) that the Coca-Cola payments were analogous to soil bank payments and should therefore be deducted from net income under § 404.1575(c), reasoning as follows:

> The undersigned is not persuaded that the "commissions" should be excluded from the claimant's "countable income." The above-cited ruling and regulations unambiguously describe the types of expenses to be deducted in determining "countable income." Commissions received as a blind vendor are not listed among the excludable categories for determining "countable income," and the claimant has cited no authority supporting his position on the issue beyond the analogy to soil bank payments. The undersigned observes that the soil bank program (created by the Agricultural Act of 1956 and repealed by the Food and Agriculture Act of 1965) provided compensation to farmers for economic loss incurred by removing land from agricultural production. This is distinguishable from the commissions paid to the claimant, the receipt of which would necessarily be linked to his successful ongoing activity as a blind vendor.

(AR 20.) The ALJ concluded by finding that "the claimant worked and fully earned over the monthly limit for substantial gainful activity for individuals with statutory blindness in January 2000 and continuing." (AR 21.) His specific, enumerated findings were as follows:

1. The claimant has engaged in substantial gainful activity since the last favorable determination.

2. The claimant is working as a blind vendor, and has been since December 1988. His earnings averaged $2,419.33 per month in 2000 and $3,389.83 per month in 2001. The claimant's work is continuing.

3. The claimant's work activity involves significant physical or mental activity for pay or profit (20 C.F.R. § 404.1572).

4. The claimant's work activity constitutes substantial gainful activity within the meaning of the regulations for the period January 2000 and continuing (20 C.F.R. § 404.1575 and 404.1584).

5. The claimant is no longer disabled within the meaning of the Social Security Act.

(AR 21.)

### III. THE MAGISTRATE'S REPORT

Plaintiff's argument before this Court is that the ALJ, in ascertaining Plaintiff's "countable income" for

6

purposes of determining whether Plaintiff had engaged in SGA, erroneously included as "fully earned" the income attributable to Plaintiff's "commissions" from Coca-Cola, despite the undisputed evidence that Plaintiff did no actual work to *earn* the commissions generated by Coca-Cola's full-service vending machines. The Magistrate, in his thorough and well reasoned Report, concluded that "the issue of whether or not this commission income was earned by plaintiff, or whether the distinction of earned versus unearned is even an issue in establishing the self-employment income from which the countable earnings of an otherwise disabled blind vendor are ascertained, deserves further administrative consideration." (Doc. No. 14, at 6.) In other words, the Magistrate simply found that the ALJ erred in failing to consider the issue raised by Plaintiff, and that remand was required in order to provide the ALJ with the opportunity to do so.

In reaching that conclusion, the Magistrate observed that the distinction between earned and unearned income is drawn in several places in the disability regulations, particularly in the entitlement provisions of Title XVI (Supplemental Security Income), 20 C.F.R. §§ 416.1104, 416.1110–.1112, 416.1120–.1124, and in 20 C.F.R. § 1574(a)(2), which concerns the evaluation of the work activity of an employee for purposes of determining if he is engaged in SGA. The language of the corresponding regulation dealing with self-employment, 20 C.F.R. § 1575, quoted above, refers to the claimant's value to the business, and the relevant Social Security Ruling specifically states that it "is concerned only with that income which represents the person's own productivity." SSR 83-34. As the Magistrate noted, these latter references appear to distinguish between the claimant's own efforts and the uncompensated efforts of others or the assumption by others of the claimant's unincurred business expenses, but the apparent goal of the regulation is nonetheless to establish the business owner's contribution to the generation of income. Cf. Innerebner v. Apfel, 67 Soc. Sec. Rep. Serv. 262, 2000 WL 274185, at *4 (N.D. Cal. March 2, 2000) (finding error in the ALJ's refusal to make any adjustment to the income of an employee claimant who was only able to work and receive a full wage with assistance of a job coach provided by virtue of his participation in a program funded by the Rehabilitation Act of 1973, and stating, "It does not matter who pays for the job coach, the employer or a third-party organization. The applicant should not be charged with that portion of his or her paycheck that someone else earns. SSA so concedes.").

The Magistrate also found that the record contained two items that "suggest that such commission payments to self-employed blind vendors have not in the past been counted in the SGA determination." (Doc.

7

No. 14, at 17.) The first is a letter to Plaintiff from the Director of Services for the Blind and Visually Impaired, a division of Tennessee's Department of Human Services, advising Plaintiff that the Social Security Administration would not consider income from Coca-Cola's vending machines to be earned income that would be counted against him. (AR 217–18.) The other item is a reference in Plaintiff's counsel's brief to the Appeals Council stating that the Appeals Council had "addressed this situation in the past" and determined that income received by blind vendors as a result of the implementing regulations of the Randolph-Sheppard Act "should not be included as countable income for purposes of determining eligibility for SSDI benefits (See Exhibit C)." (AR 300, quoted in Doc. No. 14, at 18.) Unfortunately, Exhibit C was not included in the Administrative Record, but the Magistrate hypothesized that the fact that the precise issue presented here has never been litigated past the Appeals Council level, "further indicates the existence of such a policy." (Doc. No. 14, at 18.)

> The Magistrate concluded:
>
> In short, the ALJ's finding that plaintiff "fully earned" the [Coca-Cola] "commissions" . . . begs the question of whether the income from which the applicable deductions under § 404.1575(c) are made should include unearned income. If unearned income should not be included in that initial figure from which deductions are made to arrive at first net income and then "countable income," then the fact that "[c]ommissions received as a blind vendor are not listed among the excludable categories for determining 'countable income'" (Tr. 20) does not substantially support the ALJ's decision.

(Doc. No. 14, at 19.) On that basis, the Magistrate recommended remand for further development and reconsideration at the agency level.

## IV. THE COMMISSIONER'S OBJECTIONS

The Commissioner now argues that Plaintiff's Coca-Cola commissions should be considered "earned income" received as part of his "compensation" for operating his vending machines in Peck Hall on MTSU's campus. The Commissioner therefore objects to the Magistrate's supposed finding that the Coca-Cola commissions were unearned income in the form of a government subsidy. The Commissioner also argues that the ALJ correctly found that the Coca-Cola commissions were not deductions from countable income under the current regulations, and that the Magistrate erred to the extent he found otherwise. In addition, the Commissioner objects to the Magistrate's supposed finding of the existence of a "policy" not to count the type of payment Plaintiff received as "earned income" for SGA purposes.

The Court agrees, in fact, that the "suggestions" in the record regarding the existence of such a policy,

8

even considered in the aggregate, are not sufficient to establish that such a policy does in fact exist. Regardless, as indicated above, the Commissioner mischaracterizes the Magistrates's findings, because the Magistrate did not expressly find that a policy exists. He merely indicated that one *might* exist and if so, that it should be articulated and applied at the agency level. In addition, the Magistrate Judge did not find that the commissions should *not* have been considered earned income, nor that the commissions should be deducted from his net income for purposes of calculating countable income. The Magistrate concluded only that the ALJ erred in failing sufficiently to analyze the issue of whether the commissions should have been considered earned income, before reaching the question of deductions.

**V.    DISCUSSION**

      **A.    Standard of Review**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). This Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. See Abbott v. Sullivan, 905 F.2d 918, 922 (6th Cir. 1990). If substantial evidence supports the ALJ's conclusion, this Court cannot reverse the ALJ's decision even if substantial evidence exists in the record that would have supported an opposite conclusion. Youghiogheny & Ohio Coal Co. v. Webb, 49 F.3d 244, 246 (6th Cir. 1995). If the Commissioner applies an erroneous principle of law or fails altogether to consider certain evidence, remand is appropriate. Faucher v. Sec'y of Health & Hum. Svcs., 17 F.3d 171, 175–76 (6th Cir. 1994).

Case law in this circuit and elsewhere makes it clear that pure legal issues may be decided by the courts, but where the relevant statute is "silent or ambiguous with respect to the specific issue," then courts must sustain the Agency's statutory interpretation, *i.e.*, regulation, if it is "based on a permissible construction" of the pertinent statute. Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984); see also Barnhart v. Walton, 535 U.S. 212, 218 (2002) (applying Chevron in the context of a case concerning the Social Security Administration's interpretation of the statutory definition of "disability"). Similarly, where Congress has delegated authority to the agency generally to make rules carrying the force of law and the agency interpretation claiming deference was promulgated in the exercise of that authority, Gonzales v.

9

Oregon, 126 S. Ct. 904, 914 (2006) (citation omitted), then an agency's interpretation of its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation." Auer v. Robbins, 519 U.S. 452, 461 (1997) (citations omitted).

This Court has found very little guidance, however, on the question of whether an ALJ is required to articulate the legal interpretations and policy decisions upon which he is relying in reaching a conclusion, other than in the context of articulating a reason for discounting the opinion of a treating physician. See 20 C.F.R. § 404.1527(d)(2); Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court nonetheless holds that if the statutes and regulations at issue here are unambiguous, then they must be applied by the Court according to their plain meaning, without requiring further input from the Administration. See Paragon Health Network, Inc. v. Thompson, 251 F.3d 1141, 1145 (7th Cir. 2001). If the statutes or regulations are ambiguous, however, then remand will be required in order to permit the Administration to make the first pass at articulating the pertinent interpretation and applying it to the facts presented in light of the significant policy considerations at issue. Cf. Petersen v. Chater, 72 F.3d 675, 677 (8th Cir. 1995) (in the context of a Social Security Continuing Disability Review, finding that the ALJ had not adequately addressed the issue of whether the claimant had received substantial income, and remanding in part because the novel issue of whether payments received from the federal government under the Department of Agriculture's Conservation Reserve Program should be excluded from the calculation of substantial income based upon the Program's similarities to the soil bank program was an issue "that must be addressed in the first instance by the agency"). See also McKart v. United States, 395 U.S. 185, 194 (1969) (noting that, because "agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise"); Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc., 902 F.2d 222, 231 (3rd Cir. 1990) (quoting McKart, noting that it is the responsibility of the administrative agency to interpret its own regulations in the first instance).

**B.     The Act and Regulations Are Ambiguous As Applied To The Facts Of This Case.**

A statute is ambiguous if it does not speak directly to the precise question at issue, see Auer, 519 U.S. at 457, and the agency "must use its discretion to determine how best to implement the policy" embodied by the statute. United States v. Haggar Apparel Co., 526 U.S. 380, 393 (1999) (considering whether the regulation at issue was a reasonable interpretation of the statute). Likewise, a regulation is ambiguous if it

10

is reasonably susceptible of more than one interpretation or if it does not expressly address a given situation. Paralyzed Veterans of Am. v. D.C. Arena L.P., 117 F.3d 579, 583 (D.C. Cir. 1997).

The Social Security Act is, obviously, the pertinent statutory scheme. The term "disability" is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). The same statute authorizes the Commissioner to issue "regulations prescrib[ing] the criteria for determining when services performed or *earnings derived from services* demonstrate an individual's ability to engage in substantial gainful activity." 42 U.S.C. § 423(d)(4)(A) (emphasis added). In addition, the statute provides that "an individual whose services or earnings meet [the requisite] criteria shall, except for purposes of section 422(c) of this title [concerning the period of trial work], be found not to be disabled." Id. The Act further specifies that certain costs, such as attendant care services and medical devices of all kinds, should be excluded from an individual's "earnings" for purposes of "determining whether an individual is able to engage in substantial gainful activity by reason of his earnings . . . except that the amounts to be excluded shall be subject to such reasonable limits as the Commissioner of Social Security may prescribe." Id.

It is clear that the term "earnings," used repeatedly throughout § 423(d)(4)(A), means "earnings derived from services." Cf. 42 U.S.C. § 42 U.S.C. § 423(d)(4)(B) ("In determining under subparagraph (A) when services performed or *earnings derived from services* demonstrate an individual's ability to engage in substantial gainful activity, the Commissioner of Social Security shall apply the criteria described in subparagraph (A) with respect to services performed by any individual without regard to the legality of such services.") (emphasis added). The statute, however, does not address the question of how directly the "earnings" must be attributable to "services" performed by the claimant, and in that sense, it is ambiguous as applied to the precise facts of this case.

As indicated above, the term "earnings" is also used repeatedly in the Social Security Regulations setting forth the criteria for determining whether a claimant is engaged in SGA. For instance, the regulation specifically pertaining to SGA calculations for blind claimants states: "[W]e will consider the *earnings from the work you are doing* to determine whether or not you should be paid cash benefits. . . . We will ordinarily consider that your *earnings from your work activities* show that you have engaged in substantial gainful activity

11

if your monthly earnings average more than the amount(s) shown in paragraphs (d)(2) and (3) of this section."

20 C.F.R. § 404.1584(a) and (d)(1) (emphasis added).

As set forth in Part II(A), above, the "test" pertaining to self-employed blind claimants further addresses earnings and the source of income as follows:

> We will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed. *We will not consider your income alone because the amount of income you actually receive may depend on a number of different factors, such as capital investments and profit-sharing agreements.* . . .
>
> . . . . You have engaged in substantial gainful activity if you *render services that are significant to the operation of the business* and receive a substantial income *from the business* . . . .

20 C.F.R. § 404.1575(a) (emphasis added).

Here, the ALJ presumed without analysis or discussion that the amount Plaintiff received from Coca-Cola was part of his "net earnings from self-employment." (AR 19, 20.) This presumption necessarily encompassed findings that the Coca-Cola commissions were "earnings derived from services," 42 U.S.C. § 423(d)(4)(A), *and* "income from [Plaintiff's] business," 20 C.F.R. § 404.1575(a)(1). These findings may well be supported by a legitimate rationale. For instance, as the Commissioner now argues, Plaintiff was only entitled to the commissions because he operated a vending business in Peck Hall on MTSU's campus. If he stopped operating his business and servicing the five machines for which he was responsible, he would also lose his entitlement to the Coca-Cola commissions. In other words, there is a direct causal relationship between Plaintiff's self-employment activity and his receipt of the commissions. Thus, the Commissioner contends, "the ALJ's decision to consider the Coca-Cola commissions earned income was reasonable because of the cause and effect relationship between the receipt of the commissions and plaintiff's performance of his self-employment as a blind vendor. . . . Plaintiff made a conscious decision to move his vending machine concession to the university location, which resulted in a substantial increase in commission payments to more than $40,000 a year in 2001 and 2002." (Doc. No. 15, at 2–3.) Plaintiff made a business decision under which he "assumed specific contractual obligations to provide vending machine services and that he would receive commission payments from Coca-Cola as part of his compensation. . . . [I]f [Plaintiff] stopped providing vending machine services at that location or discontinued his business, the commission payments would end. . . . Thus, . . . the commissions were earned income from his business activities and

12

a direct result of his self-employment." (Doc. No. 15, at 3.)

On the other hand, there may be sound bases for not including the commissions under the rubric of earned income. The subject payments to Plaintiff come directly from Coca-Cola without Plaintiff's having anything to do with Coca-Cola's vending machines and regardless of how well his own vending machines are doing. On that basis, Plaintiff argues that the commissions are not actually earned—rather, they are essentially a charitable contribution—and therefore are not "countable" for purposes of determining SGA. He points out that under 20 C.F.R. § 404.1510, only income that "results from the 'significant physical or mental activities' of the individual constitutes earnings which may be posted to a person's earnings record and which will result in credits being earned by an individual based upon those earnings." (Doc. No. 9, at 8.) Similarly, earnings from "passive investments, interest income, and the like" are not attributable to work activity and therefore not considered in determining whether a person is engaged in SGA. (Doc. No. 9, at 8–9.)

Given all these considerations in conjunction with the policy decisions that have resulted in special protections for the blind (see note 3, supra), the Court finds that the Regulations, like the Act, do not directly address the question of whether Plaintiff's Coca-Cola commissions should be considered income that is both derived from Plaintiff's services and work activity *and* attributable to his business. They are, therefore, ambiguous in this context. And, while the ALJ's decision *might* have been reasonable, the problem is that the ALJ did not actually articulate the rationale and policy considerations behind his decision, so the Court is unable to determine whether it was a *reasoned* decision at all.

Thus, in light of the Administration's obligation to construe its own regulations, the Court finds that the ALJ's unexamined assumption that the commission payments constituted earned income from self-employment is simply insufficient, and remand is required in order to permit analysis and consideration of that precise question.

## VI.  CONCLUSION

The administrative record does not permit meaningful review of the novel issue raised here of whether Plaintiff's Coca-Cola commissions should be considered as part of his self-employment income earned from his vending business, *prior* to any consideration of deductions under 20 C.F.R. § 404.1575(c). The Court therefore **REVERSES** the ALJ's decision and **REMANDS** this case for further proceedings at the administrative level.

This is a final judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge